UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-207-KSF

BRENDA MORGAN                                                             PLAINTIFF

v.                         **OPINION & ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security                                        DEFENDANT

\* \* \* \* \* \* \* \* \* \* \*

Plaintiff, Brenda Morgan, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). The Court, having reviewed the record, will remand this matter to the Commissioner for further proceedings.

**I.     OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)     If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2)     If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3)     If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous

> period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> (4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.
>
> (5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. § 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Plaintiff filed her applications for benefits on February 28, 2008 [TR 35-36]. Plaintiff's applications were denied initially and again on reconsideration [TR 39-46, 52-57]. After a hearing before an Administrative Law Judge ("ALJ") on June 16, 2009 [TR 18-34], the ALJ issued an unfavorable decision on October 29, 2009 [TR 8-17]. Plaintiff's request for review to the Appeals Council was denied on June 23, 2010, and this decision of the ALJ now stands as the final decision of the Commissioner [TR 1-5].

At the time the ALJ rendered his decision, Plaintiff was 44 years old [TR 17, 105]. She has a 10th grade education and is able to communicate in English [TR 121, 127]. Plaintiff has past

relevant work experience as a newspaper inserter [TR 23]. In her Disability Report filed in conjunction with her disability applications, Plaintiff claims that her ability to work is limited due to arthritis of the knees, torn ligament in the right knee, heart valve problems, high blood pressure and depression [TR 122]. At the hearing, Plaintiff alleged disability due to arthritis of the knees, arthritis in her hands, ankles and feet, stomach ulcer, depression and nerve problems, and leaking heart valve [TR 24-25]. Plaintiff alleges that she became disabled on September 8, 2007 [TR 105, 122] and testified that she stopped working in September 2007 because her legs were hurting and because her department moved to another city [TR 23].

The ALJ began his analysis by determining that Plaintiff has met the insured status requirements of the Social Security Act through December 31, 2007 [TR 13]. At step one, the ALJ found that Plaintiff has not engaged in any substantial gainful activity since September 8, 2007, the alleged onset date [TR 13]. At step two, the ALJ determined that Plaintiff suffers from the following combined impairments: depression, anxiety, bilateral knee arthritis, coronary artery disease and hypertension [TR 13]. Although the ALJ did not specifically discuss whether he found these combined impairments to be "severe," the ALJ did not make a determination that Plaintiff was not disabled at step two; rather, his analysis of Plaintiff's claim continued on to step three of the process. Accordingly, the Court will presume that, by continuing on to step three of the process, the ALJ implicitly determined at step two that Plaintiff's impairments or combination of impairments are severe.[1]

---

[1]Once an ALJ has determined that a claimant has one severe impairment, "the Secretary must continue with the remaining steps in his disability evaluation..." *Maziarz v. Sect. of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). In other words, once a severe impairment is found at step two, the ALJ is obligated to proceed to step three, and the specific impairments listed in the step two finding are irrelevant. Because the ALJ continued to step three

3

Continuing on to the third step, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments [TR 13-14]. At step three of his analysis, the ALJ focused on Plaintiff's mental impairments. The ALJ specifically discussed whether Plaintiff's mental impairments, considered singly and in combination, meet or medically equal the criteria of Listings 12.04 and 12.06. The ALJ noted that, in order to satisfy the criteria of "paragraph B," the mental impairments must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. The ALJ found that Plaintiff suffers from a mild restriction in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence or pace and no episodes of decompensation [TR 14]. Thus, the ALJ found that, because Plaintiff's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied. The ALJ further found that the evidence failed to establish the presence of the "paragraph C" criteria. Thus, the ALJ found that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06 [TR 13].

The ALJ then found that, based on the medically determinable evidence, and considering the degree of limitation the ALJ found in the "paragraph B" mental function analysis described above, Plaintiff has the residual functional capacity ("RFC") to perform the full range of unskilled light

---

in this case, it can be presumed that the ALJ determined that at least one of Plaintiff's impairments or combination of impairments are severe.

work as defined in 20 CFR 404.1567(b) and 416.967(b) [TR 14-16]. Based on this finding, the ALJ concluded that Plaintiff could perform her past relevant work as a newspaper inserter, as this work does not require the performance of work-related activities precluded by Plaintiff's RFC [TR 16-17]. Therefore, because Plaintiff is able to return to her past relevant work, the ALJ determined that she is not disabled. [TR 16-17]

Notwithstanding this determination, the ALJ continued on to the fifth step of the process and discussed the existence of other jobs in the national economy that Plaintiff could perform [TR 16-17]. Considering Plaintiff's age, education, work experience and RFC, the ALJ concluded that there are other jobs that exist in a significant number in the national economy that she could perform [TR 16-17]. Thus, even assuming that Plaintiff was unable to perform her past relevant work, the ALJ determined that, in the alternative, she was not disabled at step five [TR 16-17].

The ALJ's decision that Plaintiff is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied her request for review on June 23, 2010 [TR 1-5]. Plaintiff has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## I. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial

evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II. ANALYSIS

As noted above, in his analysis of Plaintiff's claim, the ALJ found that Plaintiff "has the following combined impairments: depression; anxiety; bilateral knee arthritis; coronary artery disease and hypertension" [TR 13]. Thus, Plaintiff's impairments at issue are both physical (the arthritis and the heart and blood pressure issues) and mental (the depression and anxiety). Next, the ALJ continued to step three of the evaluation process, which requires the ALJ to determine whether any of Plaintiff's severe impairments meet or equals a Listed impairment. In making this evaluation, the ALJ "must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Reynolds v. Comm'r of Social Security*, 2011 WL 1228165 at *2 (6th Cir., April 1, 2011)(citations omitted).

However, in this case, at step three of his analysis, the ALJ only discussed whether Plaintiff's *mental* impairments met or medically equaled the criteria of Listings 12.04 and 12.06. Although the ALJ later discussed Plaintiff's physical impairments in determining Plaintiff's RFC, there was no

discussion about whether Plaintiff's physical impairments met or equaled a listed impairment at the third step of the ALJ's analysis. The ALJ's failure to discuss Plaintiff's physical impairments at step three of his analysis is problematic because if the ALJ had found that any of Plaintiff's physical impairments met or medically equaled a listed impairment, she would be presumed disabled without further inquiry. *Id*. ("In other words, a claimant who meets the requirements of Listed Impairment will be deemed conclusively disabled, and entitled to benefits.").

In *Reynolds*, an unpublished Sixth Circuit case, the ALJ similarly found both a physical and mental impairment at step two of the evaluation process, "back pain" and "an adjustment disorder." *Id*. at *3. He then continued to step three of the analysis and began with his conclusion: "Claimant does not have an impairment or combination of impairments which, alone or in combination, meet sections 1.00 or 12.00 of the Listings." *Id*.[2] He then throughly analyzed Reynolds' mental impairment, comparing her medical history and testimony to the section 12.00 Listing. *Id.* Accordingly, the court found that the ALJ's analysis and conclusion regarding the claimant's mental impairment clearly met the substantial evidence standard. *Id*. at *3.

However, once the ALJ completed his analysis of Reynolds' mental impairment, he simply continued to the next step, providing no analysis of whether Reynolds' physical impairments met or equaled a Listing under section 1.00, despite his introduction concluding that they did not. *Id*. The court found that the ALJ's failure to analyze Reynolds' physical condition in relation to the Listed Impariments was erroneous, as the ALJ skipped an entire step of the necessary analysis. *Id*.

The court further concluded that the ALJ's error was not harmless, explaining:

---

[2]Section 1.00 is the subsection applicable to musculoskeletal listings, while Section 12.00 applies to mental impairments.

> The ALJ's error was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary. 20 C.F.R. § 404.1520(a)(4)(iii). Therefore, if the ALJ had properly analyzed Step Three, and had found Reynolds met Listing 1.04, she would receive benefits regardless of what the ALJ's conclusion would have been at Steps Four and Five. Additionally, in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing.
>
> In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.
>
> *Id*. at \*4.

Thus, under *Reynolds*, the ALJ's decision in this case should be reversed and the case remanded to the ALJ for further proceedings. However, the failure of the ALJ to evaluate Plaintiff's physical impairments at step three was not raised by Plaintiff in her motion for summary judgment. Similarly, this was also the case in *Reynolds*. In *Reynolds*, the court considered the ALJ's error on appeal, notwithstanding the fact that Reynolds failed to raise this specific objection to the ALJ's decision. The court explained:

> Admittedly, Reynolds did not raise this specific objection to the decision below, and generally arguments not raised are abandoned. However, this rule is prudential and not jurisdictional, *Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999), and the requirement for specific objections may be excused "in the interest of justice." *Kelly v. Withrow*, 25 F.3d 363, 366 (6th Cir. 1994). This court has previously considered the issue of whether certain impairments meet or equal a listing, even though that issue had not been raised. *See Gwin v. Comm'r of Soc. Sec.*, 109 F.App'x. 102 (6th Cir. 2004).
>
> *Id*. at \*3.

Thus, the Sixth Circuit reversed and remanded the case to the ALJ in order for the ALJ to determine whether the claimant's physical impairments met or equaled a Listing, even though the claimant did not raise this issue on appeal.

Importantly, *Reynolds* is an unpublished decision and, as such, "is not precedentially binding under the doctrine of *stare decisis*, but is considered...for its persuasive value only." *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007). Other cases have recognized that there is a "very high bar" that must be met for a court to address an issue neither raised below nor briefed on appeal, as the court should only do so in "exceptional" cases. *Dorris v. Absher*, 179 F.3d 420, 425-426 (6th Cir. 1999). However, as previously noted, in reviewing this case, the Court should consider whether the Commissioner's decision was made pursuant to the proper legal standards. Along these lines, the Sixth Circuit has recognized that "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). Because decisions of administrative agencies are reviewed for harmless error, if an agency has failed to adhere to its own procedures, the reviewing court "will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009)(internal quotations and citations omitted).

In analyzing whether an agency's failure to comply with a procedural regulation may be deemed harmless, courts have distinguished between "regulations 'intended primarily to confer important procedural benefits upon individuals' and regulations 'adopted for the orderly transaction of business before [the agency].'" *Id*. at 655-656 (quoting *Wilson*, 378 F.3d at 547). Regulations falling into the former category confer a substantial procedural right on parties before the agency,

and "it is incumbent upon agencies to follow their own procedures...even where the internal procedures are possibly more rigorous than otherwise would be required." *Wilson*, 378 at 547 (quoting *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)). "In contrast, in the case of procedural rules 'adopted for the orderly transaction of business,' an agency has the discretion 'to relax or modify its procedural rules' and such action ' is not reviewable except upon a showing of substantial prejudice to the complaining party.'" *Id*. (quoting *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970)).

In *Wilson*, the court found that 20 C.F.R. § 404.1527(d)(2)'s requirement that an ALJ give "good reasons" for not crediting the opinion of a treating physician creates "an important procedural safeguard for claimants for disability benefits." *Wilson*, 378 F.3d at 547. Thus, an ALJ's failure to comply with this requirement was not harmless and would almost always require reversal and remand to the Commissioner. *Id*. at 546-547. The court noted that "[t]he requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). The court further observed that the requirement "also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id*.

In contrast, in *Rabbers*, the court considered an ALJ's failure to apply the "special technique" for evaluating the severity of a mental impairment required by 20 C.F.R. § 404.1520a(a) and make specific findings regarding the severity of the mental impairment. *Rabbers*, 582 F.3d at 656. The court concluded that this requirement "strikes us more as an 'adjudicatory tool' designed to aid the

SSA in determining the severity of a claimant's mental impairment..." *Id*. The court noted that, unlike the treating physician rule discussed in *Wilson*, an ALJ's failure to follow the "special technique" required by § 404.1520(a) "is neither as strong nor as personal: a claimant would not be so 'especially bewildered' or offended if an ALJ did not explicitly rate the B criteria before concluding that the claimant's mental impairment was not severe enough to satisfy any of the listings." *Id*. at 657. The court also noted that it is "much easier for a reviewing court to determine whether an error under § 404.1420a is harmless" because "the reviewing court need only ask whether the record indicates that the claimant's mental impairment would have ultimately satisfied the B criteria" by examining the "objective, concrete factual and medical evidence that will be apparent in the record, at least in some cases." *Id*.

In this case, the failure of the ALJ to engage in any analysis at all of whether Plaintiff's physical impairments meet or equal a Listing is more like a "procedural safeguard" for claimants for disability benefits than an "adjudicatory tool" designed to aid the Social Security Administration. Because a claimant with an impairment that meets or equals a listed impairment is presumptively disabled and entitled to benefits, a claimant may be "bewildered" at the absence of any discussion at all as to whether her physical impairments meets or equals a Listing.

In addition, as pointed out by the *Reynolds* court, the ALJ's failure to analyze Plaintiff's physical impairments at all at step three of the evaluation process makes meaningful review of the ALJ's decision impossible. Although an extensive discussion and analysis of each claimed impairment may not be required, in this case, there was not even a conclusory statement indicating that the ALJ had, at the very least, considered Plaintiff's physical impairments, compared those impairments to a Listing or Listings, and determined that those impairments did not meet or equal

11

a Listing. The ALJ was clearly aware of Plaintiff's physical impairments, as he identified them early in the evaluation process and later discussed and incorporated them into his determination of Plaintiff's RFC. It is possible that, at step two, the ALJ determined that Plaintiff's physical impairments were not "severe," and, accordingly, although these impairments should be considered in determining Plaintiff's RFC, there was no need to analyze whether these physical impairments met or equaled a Listing. However, at step two, the ALJ failed to specifically identify which, if any, of Plaintiff's impairments he found to be "severe." Thus, it is impossible to tell if the ALJ determined that none of Plaintiff's physical impairments were "severe," or if the ALJ simply forgot to evaluate Plaintiff's physical impairments at step three. For all of these reasons, the Court cannot meaningfully review the ALJ's application of step three and determine whether the ALJ's findings at this step are supported by substantial evidence. Although, as suggested by the court in *Rabbers*, it is theoretically possible for this Court to review the medical evidence in the record, compare Plaintiff's physical impairments to the Listings, and make its own determination regarding whether Plaintiff's physical impairments meet or exceed a Listing, this Court cannot conduct a *de novo* review of Plaintiff's claim, resolve conflicts in the evidence, or make credibility determinations. *Cutlip*, 25 F.3d at 286. Thus, the step three evaluation of Plaintiff's physical impairments is a task more appropriately undertaken by the ALJ.

For these reasons, the Court finds that the ALJ's failure to evaluate Plaintiff's physical impairments at step three of the evaluation process is not harmless, as the step three requirement confers an important procedural benefit on claimants. Accordingly, in the interest of justice, this case shall be remanded to the ALJ for a step three determination of whether Plaintiff's physical

impairments meet or exceed a Listing, notwithstanding the fact that this argument was not raised by Plaintiff.

In her motion for summary judgment, Plaintiff generally argues that the ALJ's decision was not based on substantial evidence. Specifically, Plaintiff makes several references to evidence submitted to the ALJ and argues that she is unable to perform her prior employment or any other gainful employment available in significant numbers in the national economy, thus challenging the ALJ's analysis at steps four and five. However, because the ALJ must revisit his Step Three analysis, Plaintiff's arguments related to the ALJ's findings at Steps Four and Five need not be reached at this time.

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under sentence four of 42 U.S.C. § 405(g), this court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where, as in this case, there is insufficient support for the ALJ's findings, the appropriate remedy is reversal and a sentence-four remand for further consideration. *See Faucher*, 17 F.3d at 174.

**IV.    CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby orders as follows:

(1)    the claimant's motion for summary judgment [DE #10] is GRANTED IN PART to the extent that this matter is remanded to the Commissioner for further proceedings and DENIED IN PART to the extent that claimant seeks an award of benefits;

(2)    the Commissioner's motion for summary judgment [DE # 11] is DENIED;

(3)    the decision of the Commissioner is REVERSED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this Opinion and Order; and

(4)    a judgment will be entered contemporaneously with this Opinion and Order.

This June 8, 2011.

Signed By:
*Karl S. Forester* KSF
United States Senior Judge